**R.F. DAVIS, Appellant,**

v.

**TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellee.**

No. 05–87–00189–CV.

Court of Appeals of Texas, Dallas.

Dec. 11, 1987.

David R. Scoggins, Dallas, for appellant.

Gordon H. Montgomery, Dallas, for appellee.

Before WHITHAM, HECHT and THOMAS, JJ.

THOMAS, Justice.

This is an appeal from a judgment suspending for ninety days the driver's license of R.F. Davis, appellant. In two points of error, Davis complains that the trial court erred: (1) in overruling his objection to the failure of the Texas Department of Public Safety (DPS) to timely request an administrative hearing; and (2) in ruling that he had no discretion to refuse a breath test and instead agree to a blood test. We disagree and, consequently, affirm the trial court's judgment.

On January 8, 1985, a City of Euless police officer stopped Davis after the officer observed Davis' erratic driving. Davis was incapable of successfully completing a field sobriety test administered by the officer. The officer determined that Davis was intoxicated and subsequently arrested him for driving while intoxicated. At the police station, Davis was asked to submit to a breath test, but he refused. The DWI statutory warning was read to him, and the officer further explained the penalty for refusing to submit to the test. Davis again refused the breath test, although he stated he would agree to a blood test.

As a result of Davis' failure to take the breath test, the DPS, under the authority of article 6701*l*–5 of the Texas Revised Civil Statutes Annotated (Vernon Supp. 1987),[1] advised him by a notice of suspension dated March 26, 1985, that his license would be suspended for ninety days. Davis, by letter dated April 2, 1985, made a demand for an administrative hearing, as permitted by the statute. DPS, by letter dated May 15, 1985, notified Davis of the time and place of the requested administrative hearing. At the conclusion of the administrative hearing, Davis' driving privi-

leges were suspended for ninety days, and the matter was promptly appealed to a Dallas county court at law. Following an adverse ruling by that court, Davis brings this appeal.

## EVIDENCE CONCERNING DPS'S REQUEST FOR AN ADMINISTRATIVE HEARING

■ Davis contends that he established by a preponderance of the evidence that DPS failed to comply with the statutory requirement that it request a hearing not later than the 10th day after the demand for a hearing was received. We disagree.

Article 6701*l*–5, § 2(f) provides in relevant part as follows:

If, not later than the 20th day after the date on which the person receives notice by certified mail ... the department receives a written demand that a hearing be held, the department shall, not later than the 10th day after the day of receipt of the demand, request a court to set the hearing for the earliest possible date.

The trial court received into evidence: (1) the notice of suspension dated March 26, 1985; (2) Davis' demand for a hearing dated April 2, 1985; and (3) the notice letter from DPS dated May 15, 1985. The trial court took judicial notice that a letter properly deposited is usually received within three days. There was no other evidence offered by either side. Davis argues that the May 15th letter establishes that the DPS did not request a hearing within the mandatory 10–day period.

DPS's May 15, 1985 letter notifying Davis of the time and place for the administrative hearing does not establish when the DPS requested that hearing. There is no evidence to indicate when the request was made. Thus, Davis has failed to establish that the DPS did not comply with the mandatory 10–day rule, and this point of error is overruled.

1. All further statutory references are to article 6701*l*–5 TEX.REV.CIV.STAT.ANN. (Vernon Supp.1987) unless otherwise noted.

## DISCRETION TO AGREE TO A BLOOD TEST AND REFUSE A BREATH TEST

In point of error number two, Davis contends that the trial court erred in ruling that he had no discretion to agree to a blood test and refuse the breath test. We disagree. The arresting officer read to Davis the "Police Officer DWI Statutory Warning" which, according to Davis, he did not understand. Davis testified that his failure to comprehend may have arisen from his being unknowledgeable about "intoxilyzers" or could have been because he was intoxicated. Davis further testified that he offered to take a blood test on two occasions, but his requests were denied. It is Davis' contention that his consenting to the taking of the blood test was sufficient to impute consent to the taking of a breath sample, relying upon *White v. State*, 711 S.W.2d 106 (Tex.App.—Houston [14th Dist.] 1986, no writ). Therefore, Davis contends that he complied with the statutory requirement that he consent to the taking of one or more samples of his breath or blood.

■ Davis's reliance upon *White* is misplaced. White challenged the admission of the results of the breathalyzer test on the basis that he was coerced into submitting to the test. According to the evidence, White was requested to submit a sample of his breath, and he responded that he would take a blood test. The police officer repeatedly advised that a blood test was not available at that time and that they wanted him to take a breath test. White ultimately agreed to submit to a breath test. On appeal, White contended that the repeated demands by the police officer that he submit to a breathalyzer test were coercive in nature, and, therefore, the results should not be admissible. In upholding the conviction, the court held that the consent by White to take the blood test was sufficient to impute consent to take the breath sample. In holding that the State has the option to determine which test shall be administered, the insistence of the police officers on a breath sample as opposed to a blood sample was not so coercive as to

render the taking of the breath sample involuntary. *White*, 711 S.W.2d at 108. Imputed consent does not apply to Davis' situation since the evidence clearly establishes that he never consented to the breath test. Surely Davis does not contend that the police officer had the authority to administer the breath test knowing of his outright refusal.

■ Art. 6701*l*–5, § 1 provides that any person who operates a motor vehicle upon the public highways or beaches of this state shall be deemed to have given consent to submit to the taking of one or more specimens of breath or blood for the determination of the alcohol concentration present in the body. In § 2(a), the statute specifically states:

> [If] a person under arrest refuses, upon the request of a peace officer, to give a specimen *designated by the peace officer* as provided in Section 1, none shall be taken.

(Emphasis added). Further, in § 2(d) regarding the effect of a refusal, the statute states:

> If the person refuses to give a specimen, whether the refusal was express or the result of an intentional failure of the person to give a specimen *as designated by the peace officer*, the officer before whom the refusal was made shall immediately make a written report of the refusal to the Director of the Texas Department of Public Safety.

(Emphasis added). Thus, it is clear that the statute intends to provide that the type of specimen to be submitted is solely within the discretion of the arresting officers. *See White*, 711 S.W.2d at 108.

■ After a person has given the specimen designated by the peace officer, he may then request a blood test be taken by a person of his own choosing. It is provided in § 3(d) that:

> The person who *gave* a specimen of breath, blood, urine, or other bodily substances in connection with this Act *may, upon request* and within a reasonable time not to exceed two hours after the arrest, have a physician, qualified technician, chemist or registered professional

nurse of his own choosing draw a specimen and have an analysis made of his blood in addition to any *specimen taken and analyzed at the direction of a peace officer.* The failure or inability to obtain an additional specimen or analysis by a person shall not preclude the admission of evidence relating to the analysis of the specimen taken at the direction of the peace officer under this Act.

(Emphasis added).

The record establishes that a breath test was not administered and that Davis refused because he was confused. The record demonstrates that Davis did offer to submit to a blood test; however, under the facts of this case, Davis' consent to one test does not impute consent to the test requested by the police officer. Having overruled both points of error, we affirm.