**STATE of Texas, Appellant,**

v.

**Justo GONZALES, Jr., Appellee.**

**No. 04–92–00196–CR.**

Court of Appeals of Texas,
San Antonio.

Feb. 26, 1993.

Rehearing Denied Feb. 26, 1993.

Second Rehearing Denied April 28, 1993.

Steven C. Hilbig, Criminal Dist. Atty., Angela Moore, Angus K. McGinty, A.J. Dimaline, IV, Asst. Criminal Dist. Attys., San Antonio, for appellant.

John D. Wennermark, San Antonio, for appellee.

Before PEEPLES, BIERY and GARCIA, JJ.

## ON APPELLEE'S MOTION
## FOR REHEARING

GARCIA, Justice.

This opinion replaces our opinion issued December 23, 1992. Appellant, the State, appeals an order granting appellee's motion to suppress evidence. TEX.CODE CRIM. PRO.ANN. art. 44.01(a)(5) (Supp.1992). The underlying cause is a prosecution for a driving while intoxicated offense, and the evidence suppressed is the result of a blood test. We reverse and remand the case to the trial court.

Appellee, Justo Gonzales, was stopped by Deputy Esqueda in the early morning for speeding. The deputy smelled intoxicants on the appellee's breath, heard a mild slur to appellee's speech, and observed a sway in appellee's walk. Deputy Esqueda administered the Horizontal Gaze Nystagmus field sobriety test; the appellee missed his nose three out of four times. Arresting the appellee, the deputy took the appellee to the county intoxilyzer room and read appellee his Miranda rights. The DIC–24 warnings [1] were also read to the appellee. TEX.REV.CIV.STAT.ANN. art. 6701*l*–5 § 2 (Vernon 1992). Appellee stated he understood, and he attempted the breath test which kept registering "deficient sample." Appellee told the deputy it was probably due to appellee's asthma.

Since the breath test registered "deficient sample," appellee then gave blood samples. The issue at the hearing for the motion to suppress was whether these blood samples were voluntarily given. While the DIC–24 warnings were given again prior to the taking of the blood sam-

ples, the trial judge determined the samples were not taken voluntarily. The trial judge interpreted the second set of warnings followed by the second type of test as without consent because of the warnings' coercive nature when the appellee had already complied with the first warnings:

> [T]he officer is mistaken about the effect of the inability of the man to take the test. So he gives him the DIC–24 again, telling him, "If you don't give me this blood, if you don't give your blood, you're going to lose your license." And the guy says, "Okay. Well, I don't want to lose my license. I'll give you the blood."

Appellant urges the trial court erred by misconstruing TEX.REV.CIV.STAT.ANN. art. 6701*l*–5 § 1 (Vernon 1992). We agree.

 The legal standard employed when reviewing the trial court's ruling on a motion to suppress evidence is whether the trial court abused its discretion. *Williams v. State*, 535 S.W.2d 637, 639–640 (Tex. Crim.App.1976); *State v. Comeaux*, 786 S.W.2d 480, 482 (Tex.App.—1990), *aff'd*, 818 S.W.2d 46 (Tex.Crim.App.1991). The reasons behind the trial court's judgment will not create reversible error, provided the trial judge does not abuse his discretion. *Quinones v. State*, 592 S.W.2d 933, 940 (Tex.Crim.App.1980) (refusing the defendant discovery of tape recordings involving defendant is subject to a standard of review based on abuse of discretion). It is clear that when a trial judge's decision is based on any theory of law applicable to the case, that decision will be sustained even where the judge has given a wrong or insufficient reason. *Romero v. State*, 800 S.W.2d 539 (Tex.Crim.App.1990). However, in the present case, the judge misinterpreted the law. An appellant's challenge to a trial court's application of law is reviewed by an abuse of discretion standard. *Pyles v. State*, 755 S.W.2d 98, 111 (Tex. Crim.App.1988). The trial judge's misinterpretation of the law resulted in an errone-

---

1. The DIC–24 warnings are a shorthand reference to the statutory warnings encompassed in

TEX.REV.CIV.STAT.ANN. art. 6701*l*–5 § 2 (Vernon Supp.1992).

ous application of the law and was an abuse of discretion. The law reads:

**Art. 6701*l*–5. Specimens of breath or blood; implied consent; evidence**

### Consent to taking of specimens

Section 1. Any person who operates a motor vehicle upon the public highways or upon a public beach in this state shall be deemed to have given consent, subject to provisions of this Act, to *submit to the taking of one or more specimens of his breath or blood for the purposes of analysis* to determine the alcohol concentration or the presence in his body of a controlled substance or drug if arrested for any offense arising out of acts alleged to have been committed while a person was driving or in actual physical control of a motor vehicle while intoxicated. Any person so arrested may consent to the giving of any other type of specimen to determine his alcohol concentration, but he shall not be deemed, solely on the basis of his operation of a motor vehicle upon the public highways or upon a public beach in this state, to have given consent to give any type of specimen other than a specimen of his breath or blood. The specimen, or specimens, shall be taken at the request of a peace officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle upon the public highways or upon a public beach in this state while intoxicated.

Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5 § 2 (Vernon 1992).

The State asserts that the unavailability of the breath test due to appellee's asthma does not preclude the State from taking the blood test with appellee's consent under the warnings. The amendment to the statute reveals the legislature struck the language of "a chemical test or tests" and added "submit to the taking of one or more specimens of his breath or blood." *See* Act of June 16, 1983, ch. 303, secs, 28(a) and (c), 1983 Tex.Sess.Law Serv. 1568, 1577, 1607 (Vernon). The statute does not provide that once any type of breath test is attempted, the State cannot perform a second

successive test. Even if the breath test had been completed, the State would still be able to use the "implied consent" found in art. 6701*l*–5 § 1, to secure consent from an arrestee for a successive blood test. *See Nevarez v. State*, 671 S.W.2d 90, 92 (Tex.App.—El Paso 1984, no pet). In *Nevarez* an asthmatic was given the warnings for the refusal to take a breath test, but he was unable to give sufficient specimen for the breathalyzer test. The appeals court twice noted no other opportunity was afforded the defendant to substantiate his blood-alcohol level; therefore, the defendant could not be classified as refusing to take a test. *Nevarez*, 671 S.W.2d at 92. Although the court of appeals in *Nevarez* did not address the legality of the second test, the court commented on the procedure of allowing a second test. *Id.* It was clearly inferred that a second test would have been appropriate.

The appellee in the present case was also asthmatic and was unable to provide a sufficient specimen for the breathalyzer test. The appellee in this case was given an opportunity to substantiate his blood alcohol level through the blood test. The taking of the blood specimen was in compliance with art. 6701*l*–5, which allows for "one or more specimens of his breath or blood for the purpose of analysis." Tex. Rev.Civ.Stat.Ann. art. 6701*l*–5 § 1 (Vernon Supp.1992). Moreover, the "consent to taking of a bodily fluid for the purpose of determining its alcohol concentration is sufficient to impute consent to taking of a breath sample." *White v. State*, 711 S.W.2d 106, 108 (Tex.App.—Houston [14th Dist.] 1986, no pet.) (defendant consented to blood test, but only a breath test given).

Of particular importance is the discretion the arresting officer has in subjecting the defendant to a particular type of test. *Davis v. Texas Dept. of Public Safety*, 741 S.W.2d 616 (Tex.App.—Dallas 1987, no pet.). *White*, 711 S.W.2d 106. The applicable statute states,

(d) If the person refuses to give a specimen, whether the refusal was express or the result of an intentional failure of the person to give a specimen **as designated by the peace officer,** the officer before

whom the refusal was made shall immediately make a written report of the refusal to the Director of the Texas Department of Public Safety.

REV.CIV.STAT.ANN. art. 6701*l*–5 § 2(d) (Vernon 1992). "Thus, it is clear that the statute intends to provide that the type of specimen to be submitted is solely within the discretion of the arresting officers." *Davis,* 741 S.W.2d at 618. The deputy in the instant case testified that after the breath test registered "deficient sample," he decided to administer the blood test. The blood test was within the deputy's discretion given the "deficient sample," which in effect did not render a viable specimen for the purposes of a test. *See* TEX.REV.CIV.STAT.ANN. art. 6701*l*–5 § 1 (Vernon 1992).

Appellee argues that his consent to the blood test was not voluntary because the officer misstated the consequences which would result from a refusal to take the test. *State v. Sells,* 798 S.W.2d 865 (Tex.App.1990) (motorist's consent to breath test was not voluntary when it was induced by officer's misstatement). That is, since appellee had voluntarily given his consent for the breathalyzer test, he had complied with art. 6701*l*–5, and the negative effects of not complying could not be imposed against him. Appellee, thus, contends the deputy misstated the consequences of refusing to submit to the blood test when the deputy gave the appellee a second set of warnings. As a result, the appellee argues the second warning to take the blood test was coercive when the appellee had already complied with the statutes' requirements and the consequences for refusal were inapplicable. The blood test, according to appellee, should be suppressed. Appellee urges that the trial court did not misconstrue the applicable statute and, further, that the motion to suppress was appropriate on several grounds independent of whether the appellee voluntarily submitted to the second test. Those grounds were:

1. The arrest was unlawful;
2. The deputy failed to notify appellee that he could obtain additional tests by the medical personnel of his choosing;
3. The deputy failed to notify appellee that he could obtain additional information concerning the analytical results of the tests.

There is nothing in the record indicating the judge suppressed the blood test evidence based on any of these allegations. Instead, the trial judge acknowledged the issue of involuntariness of consent based on his interpretation of art. 6701*l*–5 § 1. It would be inappropriate for a reviewing court to determine that the suppression of the evidence is supported on other grounds when the trial court did not address any other possible grounds for the suppression. The record indicates the trial judge based his suppression of the evidence, in this case, solely on his interpretation of the statute. Further, we find no authority to support the appellee's proposed proposition that a trial court's decision will be upheld if it is correct on any basis, even if the basis is not specifically cited or stated by the court. The record on review indicates the trial judge based the suppression of the evidence on his interpretation of the statute. The trial judge misinterpreted TEX. CIV.STAT.ANN. art. 6701*l*–5 § 1 (Vernon 1992), and, therefore, abused his discretion in the application of the law.

We hold that the statute enacted by the legislature permits one or both specimens can be taken with one DIC–24 warning. Accordingly, we reverse and remand the case to the trial court.