PD-0668-15

PD-0668-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/10/2015 3:48:58 PM
Accepted 6/11/2015 3:44:39 PM
ABEL ACOSTA
CLERK

IN THE TEXAS
COURT OF CRIMINAL APPEALS

NO. _____

(Court of Appeals No. 08-13-00105-CR)

RICHARD LEE SHERMAN,

PETITIONER,

vs.

THE STATE OF TEXAS,

STATE

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

OF THE EIGHTH COURT OF APPEALS' OPINION AND JUDGMENT IN CAUSE NO. 08-13-00105-CR ON APPEAL FROM THE 271ST DISTRICT COURT OF WISE COUNTY, HON. JOHN FOSTEL, JUDGE PRESIDING.

Timothy Choy
State Bar No. 24056721
204 W. Central Ave.
Fort Worth, TX 76164
Ph: (817) 625-5582
Fax: (817) 625-5881
Email: tim@timchoylaw.com

FILED IN
COURT OF CRIMINAL APPEALS

June 11, 2015

ABEL ACOSTA, CLERK

COUNSEL FOR PETITIONER

## IDENTITY OF PARTIES AND COUNSEL

The Parties to the trial Court's Judgment are:

Richard Lee Sherman TDC #01839864
Boyd Unit, 200 Spur 113
Teague, Texa 75860                                    Defendant/Petitioner

Counsel are:
Tim Choy                                             Defense Counsel
Attorney At Law
204 West Central Ave.
Fort Worth, Texas 79601

The State of Texas                                    Prosecution

Hon. Greg Lowery,
Office of
the Wise County District Attorney
101 N. Trinity Street
Decatur, Texas, 76234
email: districtattorney@co.wise.tx.us.

Hon. John Fostel                                     Judge Presiding
Presiding Judge, 271st District
Court, 101 N Trinity St # 102
Decatur, TX 76234

Hon. David L. Richards
Tex. State Bar No. 16945500                          Former Defense Counsel
3001 West 5th Ste. 800
Fort Worth, Texas 76107

Hon. Lisa McMinn                                     State of Texas
Office of the State Prosecuting Attorney
P. O. Box 13046
Austin, Texas 78711-3046
email:information@spa.texas.gov

2

# TABLE OF CONTENTS

Identity of Parties and Counsel.................................................................2

Table of Contents.......................................................................................3

Index of Authorities..................................................................................4

Statement Regarding Oral Argument........................................................5

Statement of The Case..............................................................................5

Statement of Procedural History...............................................................5

## QUESTION PRESENTED FOR REVIEW

Whether the Court of Appeals fundamentally misunderstood the nature of Petitioner's complaint on appeal, repeatedly stating the Court was addressing a "hearsay" issue, when actually the Court should have been addressing a "relevancy" objection that was raised in Petitioner's complaint on appeal?

## REASON FOR REVIEW

The Court of Appeals should be directed by this Court to correctly address the complaint made in the trial court and on appeal.

Prayer........................................................................................................8

Certificate of Service.................................................................................9

Court of Appeals' Opinion and Judgment.......................................Appendix

# *INDEX OF AUTHORITIES*

**Texas Appellate Court Cases**

*Richard Lee Sherman v. State of Texas,*
No. 08-13-00105-CR, April 30, 2015  (Memorandum Opinion)
(Unpublished)..................................................................................................6

**RULES**

TEX. R. APP. P. 40.2.......................................................................................5

TEX. R. APP. 68.............................................................................................5

**TO THE COURT OF CRIMINAL APPEALS:**

COMES NOW *RICHARD LEE SHERMAN*, by and through his attorney of record, Tim Choy, and pursuant to Rule 68, Texas Rules of Appellate Procedure, files this *PETITION FOR DISCRETIONARY REVIEW*, and for such Petitioner would show this Court as follows:

## *STATEMENT REGARDING ORAL ARGUMENT*

This petition involves an interesting question of state law concerning whether a defendant's argument on appeal should be correctly recognized and interpreted by the appellate court. For that reason, Petitioner believes oral argument would assist the Court in arriving at its decision.

## *STATEMENT OF THE CASE*

Appellant was convicted of the offense of sexual abuse of a child. Appellant presented one issue on appeal – a claim that a **relevancy** objection in the trial court was incorrectly overruled by the district judge.

## *STATEMENT OF PROCEDURAL HISTORY*

Petitioner seeks review of the El Paso Court of Appeals Judgment and Opinion in *Richard Lee Sherman v. State of Texas*, No. 08-13-00105-CR, April 30, 2015 (Memorandum Opinio) (Unpublished). This petition is filed on the 1st Monday

5

after the 30th day following issuance of the opinion, the 30th day falling on a weekend.

## QUESTION PRESENTED FOR REVIEW

Whether the Court of Appeals fundamentally misunderstood the nature of Petitioner's complaint on appeal, repeatedly stating the Court was addressing a "hearsay" issue, when actually the Court should have been addressing a "relevancy" objection that was raised in Petitioner's complaint on appeal?

## REASON FOR REVIEW

The Court of Appeals should be directed by this Court to correctly address the complaint made in the trial court and on appeal.

## DISCUSSION

Mr. Sherman respectfully disagrees with the Eighth Court of Appeals' focus and emphasis in its determination and resolution of contention that the trial court erred in overruling trial counsel's <u>relevancy</u> objection.

This case was transferred to the Eighth Court of Appeals from the Second Court of Appeals, as noted in the El Paso Court's 1st footnote at page 2 of the opinion.

Significantly, Petitioner presented one claim on appeal contending the district court reversobly erred in overruling defense counsel's <u>relevancy</u> objection to the introduction of harmful testimony. In its opinion, the Court of Appeals inexplicably and repeatedly states Petitioner's complaint on appeal involves a claim that the trial

6

court improperly overruled defense counsel's "hearsay" objection. Less this Court believe that the mistake was simply a typographical error in the opinion, Petitioner notes the mistake was <u>repeated</u> at critical places in the opinion: "Sherman raises one issue on appeal. He contends the trial court abused its discretion in overruling his <u>hearsay objection</u> to a question posed by the State . . . ." (slip opinion, p. 1)(emphasis by Petitioner); <u>Discussion</u> (emphasis by court) Sherman contends the trial court abused its discretion in overruling his <u>hearsay objection</u>. (slip opinion, p. 5) (emphasis by petitioner). Although the Eighth court thereafter engages in a discussion and determination based on the relevancy issue actually presented on appeal, this Court should have no confidence the court correctly considered and devoted the level of scrutiny the issue required. Rule 40.2 requires reviewing court's to issue opinions, "having due regard for the parties' rights and for the proper administration of justice." Tex. R. App. Proc. Rule 40.2.. That a three-judge panel of an appellate court could repeatedly mischaracterize the issue presented and the objection made in the trial court is indicative of a disregard (not an intentional disregard, but a disregard) of Petitioner's rights.

## PRAYER FOR RELIEF

Petitioner prays that for the above reason this Court grant discretionary revie, and order further briefing and oral argument on the issue presented. He further requests reversal of the lower court's decision and remand of his case for new trial.

Respectfully Submitted,

TIMOTHY CHOY
State Bar No. 24056721
204 West Central Avenue
Fort Worth, Texas 76164
Phone: 817/625-5582

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that this petition contains 1.097 words and complies in all other respects, including 14 point font, with T.R.A.P., Rule 9.04(i)(3).

TIMOTHY CHOY

8

## CERTIFICATE OF SERVICE

The undersigned, TIM CHOY, certifies that he has sent a copy of this document (in that it has been e-filed) with the appellate division of the Wise County District Attorney's Office, Hon. Greg Lowery electronically atdistrictattorney@co.wise.tx.us , and with the Hon. Lisa McMinn, Office. of the StateProsecutngAttorney, P. O. Box 13046 Austin, Texas 78711-3046, via email to information@spa.texas.gov, this 1st day of June, 2015.

_____
TIM CHOY

19

# APPENDIX



COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RICHARD LEE SHERMAN, | § | No. 08-13-00105-CR |
| Appellant, | § | Appeal from the |
| v. | § | 271st District Court |
| THE STATE OF TEXAS, | § | of Wise County, Texas |
| Appellee. | § | (TC#CR16082) |
| | § | |

## O P I N I O N

Appellant Richard Lee Sherman was charged with continuous sexual abuse of a child, his daughter. *See* TEX.PENAL CODE ANN. § 21.02(b) (West Supp. 2014). The jury found Sherman guilty of the lesser-included offense of indecency with a child by contact and assessed punishment at twenty years' confinement. *See* TEX.PENAL CODE ANN. § 21.11(a)(1) (West 2011). Sherman raises one issue on appeal. He contends the trial court abused its discretion in overruling his hearsay objection to a question posed by the State in its attempt to impeach his sole defense witness. We conclude the trial court did not abuse its discretion in allowing the State to impeach the witness on a collateral matter because Sherman opened the door to impeachment in his direct

examination of the witness. Accordingly, we affirm.[1]

## FACTUAL AND PROCEDURAL BACKGROUND[2]

The complainant, C.S., began living with her father and his wife when she was 10 years' old. She would normally sleep in her own room, but on three occasions she slept in the master bedroom with Sherman and his wife. C.S. testified that Sherman fondled her on all three occasions. The first time was when she was still 10, and she awakened to find Sherman touching her underneath her clothes "on the spot" where she urinates. The second time, Sherman was rubbing her genitals, which she testified hurt her "[r]ight in the middle." The third time was when C.S. was 11, and C.S. awakened to find Sherman touching her as before. C.S.'s first outcry was to her mother as she was being returned home to Sherman from a visitation with her mother and maternal grandmother.[3] C.S. decided to tell her mother because she did not want her father to touch her again and was scared to go back to his house.

C.S. testified that during the time she lived with Sherman, a CPS caseworker (Garcia) would periodically check on her at her father's house and at school. C.S. denied that anyone coached her to say her father touched her. She denied telling CPS caseworker Garcia that her maternal grandparents were trying to make her say "bad stuff" about Sherman.

An investigator with the Wise County Sheriff's Office spoke with Sherman on three different occasions after the abuse allegations arose. On the first occasion, the investigator

---

[1] This case was transferred from the Second Court of Appeals in Fort Worth, and we decide it in accordance with the precedent of that court to the extent required by TEX.R.APP.P. 41.3.

[2] Because the jury found Sherman guilty of the lesser-included offense of indecency with a child by contact, and Sherman does not attack the sufficiency of the evidence on appeal, we limit our discussion to the facts relevant to Sherman's claimed error.

[3] Sherman abused C.S. during a time Sherman and C.S.'s mother were estranged and custody of C.S. was an issue. C.S. made the outcry to her mother after it was determined that Sherman should have primary custody of C.S.

2

informed Sherman he was not ready to talk because evidence was still being collected. Sherman continued to inquire, however, and at one point made the statement, "[I]f I did anything, I was asleep." On the second occasion, Sherman denied the abuse allegations and reiterated that if something had occurred he must have been asleep. At a subsequent interview, Sherman admitted he touched C.S. on her vagina when C.S. was in bed with him.[4] Sherman claimed it was an accident because he thought he was touching his wife. Sherman then wrote and signed the following statement and apology:

> I, Richard Sherman, was sleeping in bed one night with my wife and daughter. In my sleep I was going to make moves on my wife – well, I was touching on my daughter totally thinking it was my wife. When I realized it was not my wife, I got so sick to my stomach and went to the other room. I assured [C.S.] that it would never ever happen again. And it hasn't ever happened again. I never told any one [sic] about this incident because it was so humiliating and I don't think I could bring it to myself to say what I – what has happened.

> . . .

> [C.S.], hey baby girl, daddy is so very sorry for what happened to you. I told [you] it was an accident and it was. I would never ever hurt you on purpose – on purpose and you should know that. I love you dearly. And once again, I'm so so sorry for what I did.

Sherman called only one witness at trial, CPS caseworker Garcia. Garcia first began monitoring C.S. on a monthly basis with visits beginning in February 2010, when C.S. was initially placed with Sherman.[5] At the time, the question of the ultimate custody of C.S. had not been decided, and CPS was attempting to determine what placement was in C.S.'s best interest.

---

[4] An audio recording of this interview was admitted into evidence and played for the jury.

[5] A CPS supervisor, who was involved in the investigation of the abuse allegations, testified that after C.S. was placed with Sherman, she was assigned three different caseworkers, but that caseworker Garcia supervised the case for the majority of the time. She also testified C.S. informed her she did not tell Garcia about the abuse because Sherman had threatened her and because she was embarrassed to tell. The supervisor was disappointed with the level of supervision provided by Garcia who seemed to have a clear bias against the grandparents.

3

Garcia testified Sherman had expressed a desire to have full-time custody of C.S., and that C.S.'s maternal grandparents had expressed "[a] very strong desire" to have custody of C.S. Garcia testified that sometime around May 2010, C.S. expressed concern that her grandparents wanted her to say bad things about Sherman or his wife: "C.S. did discuss a few times during the visitation that her grandparent would whisper at her … [in] direct violation of the visitation rules of whispering … to tell me or tell her attorney [things] that were bad against her mom …, her step mom or her dad." In response to questions from Sherman's counsel, Garcia confirmed the CPS case concerning C.S. had gone to a court-ordered mediation in September in which Garcia had taken part. When asked who had ended up with primary custody, Garcia replied: "All parties agreed for Mr. Sherman to have primary custody of [C.S.] and that she would have biweekly weekend visits and standard holiday visits with her grandparents." The outcry of sexual abuse occurred less than two months after C.S. was informed she would be placed permanently with her father.

On cross-examination by the State, Garcia admitted that C.S. had expressed a concern in March 2010 that Sherman made her write a letter to the judge saying she wanted to live with him. And, in April 2010, C.S. told Garcia she would rather be living in foster care. When Garcia was shown Sherman's written statement in which he admitted to touching C.S., Garcia said it was the first time she had seen the statement.[6] The following exchange then occurred:

Q. [Prosecutor] Based on your training and experience, would you allow [C.S.] to live with the Defendant based on the statement [he] gave?

[Defense attorney]: Objection, relevance, your Honor.

The Court: Overruled.

---

[6] When asked "[d]o you believe that," Garcia was not allowed to answer because the trial court granted defense counsel's objections based on speculation and testifying as to the credibility of another witness.

4

A. So, are you asking if I would have concerns if she was living there and I was still involved; if that's a true statement?

Q. Yes. If you had received that statement, would you allow [C.S.] to live with the defendant based on the statement you just read?

A. I would have some concerns, but I would take it to the Court, because the Court ultimately makes the decision about where the child is placed.

## DISCUSSION

Sherman contends the trial court abused its discretion in overruling his hearsay objection. In particular, he contends that by overruling his objection, the trial court allowed into evidence impeachment testimony whether Sherman should retain custody of his daughter, when that was not an issue in the case and was not a matter within the power of a CPS caseworker to decide, and that the caseworker's testimony, "I would have some concerns," was highly prejudicial because it mixed a civil "best interest" standard in child placement cases, with the "beyond a reasonable doubt" standard required for a finding of guilt in a criminal case.

### Standard of Review

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX.R.EVID. 401. Evidence need not by itself prove or disprove a particular fact to be relevant; it is sufficient if the evidence provides a small nudge toward proving or disproving some fact of consequence. *Kirsch v. State,* 306 S.W.3d 738, 743 (Tex.Crim.App. 2010); *Stewart v. State,* 129 S.W.3d 93, 96 (Tex.Crim.App. 2004). Questions of relevance should be left largely to the trial court, relying on its own observations and experience, and we will not reverse absent an abuse of discretion. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex.Crim.App.

5

1993); *Sanders v. State*, 255 S.W.3d 754, 758 (Tex.App. – Fort Worth 2008, pet. ref'd); *Levario v. State*, 964 S.W.2d 290, 297 (Tex.App. – El Paso 1997, no pet.). If the trial court's ruling is within the "zone of reasonable disagreement," then there is no abuse of discretion, and the appellate court must uphold the trial court's ruling. *Sanders*, 255 S.W.3d at 758.

*Impeachment on a Collateral Matter*

Sherman's relevance objection was directed to whether evidence concerning the effect of his statement on C.S.'s placement was "of consequence to the determination of the action[.]" His objection thus implicated the general rule that a witness may not be contradicted or impeached as to immaterial or collateral matters. *Ramirez v. State*, 802 S.W.2d 674, 675 (Tex.Crim.App. 1990); *Rankin v. State*, 41 S.W.3d 335, 343 (Tex.App. – Fort Worth 2001, pet. ref'd); TEX.R.EVID. 608(b). It has been said that the test whether a matter is collateral, for purposes of the rule that a party is not entitled to impeach a witness on a collateral matter, is whether the cross-examining party would be entitled to prove it as part of the case. *Aguirre v. State*, 948 S.W.2d 377, 381 (Tex.App. – Houston [14th Dist.] 1997, pet. ref'd). Under this test, Garcia's opinion whether she would allow C.S. to live with Sherman in light of his statement was a collateral matter, because it was not related to or probative of an element of the State's case.

But, a well-recognized exception to the rule barring impeachment on collateral matters exists when a witness testifies gratuitously as to some matter that is irrelevant or collateral to the proceeding. In that instance, the witness may be impeached by evidence contradicting her testimony showing she is in error as to that matter. *Rankin*, 41 S.W.3d at 343 n.17 (citing *Cantu v. State*, 939 S.W.2d 627, 635 (Tex.Crim.App. 1997); *Hammett v. State*, 713 S.W.2d 102, 105 (Tex.Crim.App. 1986)); *see Polk v. State*, 170 S.W.3d 661, 665 (Tex.App. – Fort Worth 2005, pet.

6

ref'd) (same); *Altamirano v. State*, No. 08-01-00235-CR, 2003 WL 1889947, at *7 (Tex.App. – El Paso April 17, 2003, no pet.) ("Under this exception to Rule 608(b), a witness may be impeached by evidence contradicting her gratuitous and voluntary testimony on an irrelevant or collateral matter."); *see also Cantu*, 939 S.W.2d at 635 (holding that the rule permitting cross-examination on any matter relevant to credibility, allows for impeachment on a collateral matter when relevant to a witness's credibility by contradicting witness's testimony); TEX.R.EVID. 613(b). The Court of Criminal Appeals has instructed in this regard that: "Should the witness or the party tendering him 'open the door,' however, by gratuitously raising the collateral matter, the opposing party may impeach the witness on the matter so raised." *Hammett*, 713 S.W.2d at 106 n.4.

### *Application*

In his direct examination of CPS caseworker Garcia, Sherman's counsel raised the issue of the court's decision to place C.S. with Sherman and elicited evidence that caseworker Garcia took part in the court-ordered mediation that resulted in that placement and that "[a]ll parties" agreed that Sherman should have primary custody. Sherman effectively opened the door to the impeachment of Garcia on the collateral matters of primary custody and Garcia's agreement with that custody by presenting testimony from which the jury could infer that CPS caseworker Garcia took part in and agreed with the decision to place C.S. with Sherman. The State was thus allowed to attempt to dispel any notion of Garcia's imprimatur to the placement by showing she would have reservations to that placement in light of Sherman's statement. We conclude therefore that because Sherman opened the door to impeachment on a collateral matter, the trial court did not abuse its discretion in overruling Sherman's relevance objection and in allowing evidence that Garcia "would have some concerns" over the placement in light of Sherman's written statement.

7

Accordingly, Sherman's sole issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

STEVEN L. HUGHES, Justice

April 30, 2015

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

8